**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ABRAHAM WILLIAMS, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-2877** |
| **ST. TAMMANY PARISH, ET AL.** | **SECTION: D(3)** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) filed by Defendants St. Tammany Parish and Mike Cooper in his individual capacity and his official capacity as St. Tammany Parish President (collectively, "St. Tammany").[1]  Plaintiffs Abraham Williams and Lorraine Williams (the "Williamses") oppose the Motion,[2] and St. Tammany filed a reply.[3]  After careful consideration of the parties' memoranda, the record, and the applicable law, the Motion is **GRANTED**.

### I.    FACTUAL BACKGROUND

In an effort to "further the governmental interests of public safety," St. Tammany enacted Ordinance 7530 (the "Ordinance").[4]  The Ordinance requires operators of transitional facilities to apply for a permit to operate the facility.[5]  The Ordinance defines a "transitional facility" as:

> [A] facility used to house (a) registered sex offenders, (b) sexually violent predators or (c) child predators, pursuant to La. R.S. 15:540 ("registered

---

[1] R. Doc. 28.

[2] R. Doc. 29.

[3] R. Doc. 30.  The Williamses filed an Opposed Motion for Leave to File a Sur-Reply, which the Court denied.  R. Docs. 31 and 35.  The Court notes that this Order and Reasons does not rest in any part on the law and/or arguments the Williamses sought to respond to in their proposed Sur-Reply.

[4] R. Doc. 27-2.  The Court refers to the Williamses' Amended Complaint in detailing the factual background of this matter, as that is the operative pleading in this case.  *See* R. Doc. 27.

[5] R. Doc. 27-2 at 2.

sex offender") and which may provide transitional support to registered sex offenders reentering society or providing housing for registered sex offenders in a group setting. Any residential or commercial use, apartment building, apartment hotel, dwelling, or residence, as defined by Sec. 130-5, with such registered sex offenders as residents is hereby considered a "transitional facility" when its resident population is equal to or exceeds fifteen percent (15%) of registered sex offenders.[6]

An "operator" is defined under the Ordinance as an "owner, operator, agent, representative, and/or approved applicant who owns or operates a transitional facility and must comply with the requirements of this article."[7]

Along with applying for permit, the Ordinance requires, among other things, that an operator submit a site and floor plan of the facility, that the facility be made available at all times for inspection of the premises by the Department of Planning and Development and the Department of Permits and Inspections, that the owner maintain insurance, a $5,000 permit fee, that a privacy fence of no less than six feet surround the facility, and that the facility have an individual supervising the facility who is on the premises twenty-four hours per day, seven days per week.[8] The Ordinance also requires an operator to, prior to applying for the permit, publish a notice that they will be applying for the permit at least three times in a St. Tammany Parish circulation and place a sign in the front yard alerting the public of their intent.[9]

On November 27, 2024, the Williamses, who own several rental properties in St. Tammany Parish, received a letter from Ross P. Liner of the St. Tammany Parish

---

[6] *Id.*
[7] *Id.*
[8] *Id.* at 2-3.
[9] *Id.* at 2.

Government Department of Planning and Development, which read: "beginning on January 1, 2025, the facility at the addresses listed above will be required to have a Transitional Facility Permit . . . . Failure to obtain a valid permit by January 1, 2025 will result in enforcement proceedings by St. Tammany Parish Government."[10]  On December 13, 2024, the Williamses filed suit in this Court, alleging that the Ordinance is unconstitutional.[11]  Specifically, the Williamses argue that it violates their rights under the First, Fourth, Fifth, Tenth, Thirteenth, and Fourteenth Amendments to the United States Constitution.[12]

On March 1, 2025, St. Tammany filed a Motion Pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the Williamses do not have constitutional standing to attack the Ordinance.[13]  St. Tammany argues initially that it is not even clear whether the Ordinance applies to the Williamses.[14]  Even in the event that it does, St. Tammany argues, the Williamses lack standing because the Williamses' alleged injury is not tied to a constitutionally protected right and because there has been no substantial threat of enforcement against the Williamses.[15]  St. Tammany further notes that the Williamses have not yet applied for a permit for any of the properties that they own.[16]

---

[10] R. Doc. 27 at ¶ 8 (quoting R. Doc. 27-1).

[11] R. Doc. 1.  The Williamses filed an Amended Complaint on February 20, 2024, which is the operative complaint in this matter.  R. Doc. 27.

[12] *Id.*

[13] R. Doc. 28.

[14] R. Doc. 28-1 at 12.

[15] *Id.* at 13.  St. Tammany also cites law pertaining to prudential or statutory standing, which, in contrast to constitutional standing, is not jurisdictional.  Article III standing "goes to the court's jurisdictional power to hear the case, while the prudential limitation goes to the court's administrative discretion to hear the case."  *Lewis v. Knutson*, 699 F.3d 469, 473 (5th Cir. 2013).  However, the Court reads St. Tammany's arguments as an attack on constitutional standing alone.

[16] R. Doc. 28-1 at 12-13.

In response, the Williamses argue that St. Tammany is attempting to hold them to a heightened pleading standard and that they have plead "a 'short and plain statement of the claim show that [they] are entitled to relief.'"[17]  The Williamses argue that the letter from Mr. Liner makes clear that they have a personal stake in this dispute.[18]  They further argue that it is of no consequence that they have not yet applied for a permit because the Ordinance imposes several obligations prior to even applying for a permit, including the construction of a privacy fence, hiring employees, paying a permit fee, maintaining insurance, and posting in a publication and in the yard of the prospective transitional facility the intent to apply for a permit.[19]  The Williamses then reject St. Tammany's position that the Williamses' claims are not tied to a constitutional right.  The Williamses argue that the Ordinance violates the Fourth Amendment and the Constitution's Takings Clause because the inspections and monitoring required by the Ordinance will require those individuals to access the property.[20]  Finally, the Williamses argue that the Ordinance infringes upon their First Amendment right to freely enter into tenant rental contracts with registered sex offenders without having to first comply with the Ordinance requirements.[21]

## II.    LEGAL STANDARD

Standing is a question of subject matter jurisdiction and is therefore properly analyzed under Federal Rule of Civil Procedure 12(b)(1).[22]  Faced with a Rule 12(b)(1)

---

[17] R. Doc. 29 at 3 (quoting FED. R. CIV. P. 8(a)(2)).
[18] *Id.*
[19] *Id.* at 4.
[20] *Id.* at 6.
[21] *Id.* at 8.  The Williamses cite additional constitutional violations in their Amended Complaint, but the Court does not read their opposition to address those alleged violations.
[22] *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016).

motion, a court may find that it lacks subject matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[23]  The party asserting jurisdiction bears the burden of proving it.[24]

## III.   ANALYSIS

Federal courts are limited to hearing "Cases" and "Controversies."[25]   To constitute a case or controversy, "the plaintiff must have a personal stake" in the case—in other words, standing."[26]  The requirements of standing are familiar:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized); and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[27]

"Pre-enforcement injury is a special subset of injury-in-fact."[28]   In a pre-enforcement action, "the injury is the anticipated enforcement of the challenged statute in the future."[29]  "When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenge the

---

[23] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).
[24] *Id.*
[25] *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 422 (2021).
[26] *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997)) (internal quotations omitted).
[27] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted) (cleaned up).
[28] *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024).
[29] *Id.*

law."[30]  Instead, a plaintiff must only allege that he "(1) has an 'intention to engage in a course of conduct arguably affected with a constitutional interest,' (2) his intended future conduct is 'arguably . . . proscribed by the policy in question' and (3) 'the threat of future enforcement of the challenged policies is substantial.'"[31]

Before reaching the pre-enforcement specific questions pertaining to injury-in-fact, the Court considers St. Tammany's threshold argument that the Williamses have failed to allege that the Ordinance applies to them.  Despite St. Tammany's urging, the Court finds that the Williamses have sufficiently alleged that they are implicated by the Ordinance.  Although the Williamses do not explicitly allege that their properties constitute transitional facilities or that they are operators under the Ordinance, they do allege that they "own several rental properties in St. Tammany Parish" and that they received a letter from the St. Tammany Parish government informing them that they are subject to the Ordinance.[32]  The Williamses argue that "[t]here is nothing speculative or conjectural about Ross P. Liner, on behalf of St. Tammany Parish, writing a letter to Plaintiff Abraham Williams which stated that if Plaintiff Abraham Williams' [sic] 'failure to obtain a valid permit by January 1, 2024 will result in enforcement proceedings by St. Tammany Parish Government.'"[33]  The Williamses further allege that this letter has caused them "mental anguish because of the imminent threat of losing a significant portion of their rental income, from their sex offender tenants, as well as Plaintiffs now having a fear of being force [sic] to

---

[30] *Susan B. Anthony v. Driehaus*, 573 U.S. 149, 158 (2014).
[31] *Id.* (quoting *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020)) (brackets omitted).
[32] R. Doc. 27 at ¶¶ 7-8.
[33] *Id.* at ¶ 83 (quoting R. Doc. 27-1) (brackets omitted).

comply with the unconstitutional requirements of Ordinance 7530."[34]    These allegations, taken together, are sufficient to establish, at this stage of the case, that the Ordinance applies to the Williamses.

The Court nevertheless finds that the Williamses have fallen short of their burden to plead standing.    The first two pre-enforcement factors require that a plaintiff have "an intention to engage in a course of conduct arguably affected with a constitutional interest that is proscribed by law.[35]    Notably, it is not entirely clear in what conduct, if any, the Williamses intend to engage.    Even assuming, however, that the Williamses had sufficiently plead that they intended to engage in conduct arguably affected with a constitutional interest, they have not alleged that such conduct is arguably *proscribed by law*.

The Ordinance proscribes the operation of a transitional facility without a permit.    The Williamses do not plead any facts that would even suggest that they intend to operate a transitional facility without obtaining a permit or completing the necessary steps to qualify for a permit.    In fact, the Williamses appear to admit that they plan either to apply for a permit or stop renting to registered sex offenders to avoid their properties from qualifying as transitional facilities.    In their Amended Complaint, the Williamses state that the letter they received "has caused the Plaintiffs mental anguish because of the imminent threat of losing a significant portion of their rental income, from their sex offender tenants, as well as Plaintiffs now having a fear of being force to comply with the unconstitutional requirements of

---

[34] *Id.* at ¶ 84.
[35] *Driehaus*, 573 U.S. at 159.

Ordinance 7530."[36]  If anything, this suggests that the Williamses do *not* intend to engage in conduct proscribed by law.

The Fifth Circuit's decision in *Paxton v. Dettelbach* is instructive.[37]  In that case, the Fifth Circuit considered whether plaintiffs had standing to challenge a federal statute criminalizing making firearm silencers for personal use without complying with certain requirements, including a tax and a permit.[38]  There, the plaintiffs submitting signed, unsworn declarations, which provided, in relevant part:

> I intend to personally manufacture a firearm suppressor for my own non-commercial, personal use. The firearm suppressor will be manufactured in my home from basic materials without the inclusion of any part imported from another state other than a generic and insignificant part, such as a spring, screw, nut, or pin.[39]

The Fifth Circuit acknowledged that the declarations showed the plaintiffs' intention to make firearm silencers but noted that they were insufficient to show that the plaintiffs intended to act in a way that was prohibited under the relevant statute.[40]  The Court explained that "the statutes at issue do not prohibit the Individual Plaintiffs from making a firearm suppressor.  Rather, they only prohibit making a firearm suppressor *without complying with the applicable procedures and requirements*."[41]  Absent a stated intention to act in a way made impermissible by the contested law, the Fifth Circuit found, the plaintiffs could not establish standing.

---

[36] R. Doc. 27 at ¶ 84.  The Court is cognizant of Fifth Circuit case law discussing mental anguish as it relates to the concreteness of an injury; however, the Court does not reach concreteness in this Order and Reasons.
[37] 105 F.4th 708 (5th Cir. 2024).
[38] *Id*. at 710.
[39] *Id*. at 712.
[40] *Id*.
[41] *Id*.

The same is true here.  Even assuming that the Williamses had alleged intended conduct (which they have not) that affects a constitutional interest, the Williamses have made no allegation whatsoever that their intended conduct runs afoul of the Ordinance.  A generous—perhaps too generous—reading of the Williamses' Amended Complaint could arguably reveal their intent to continue renting their properties.  The Ordinance does not preclude the Williamses from renting their properties, however.  It only prohibits the Williamses from renting their properties *without the requisite permit*.  Because the Williamses have not alleged an intent to rent their properties without the permit required by the Ordinance, they have failed to establish Article III standing.  For this reason, the Court declines to address St. Tammany's remaining claims and grants the instant Motion.

Before dismissing this matter, however, the Court *sua sponte* considers whether leave to amend is appropriate.  Under Federal Rule of Civil Procedure 15, "leave to amend must be 'freely given when justice so requires.'"[42]  In determining whether to allow a plaintiff an opportunity to amend, courts are instructed to consider the following factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment.[43]  None of these concerns are at issue here.  The record shows no evidence of bad faith or dilatory motive.  And while the Williamses have amended their complaint once before, the Williamses did so as a

---

[42] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000).

[43] *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)).

matter of right after St. Tammany filed a motion to dismiss the Williamses' Original Complaint.[44]  Thus, the sole amendment in this matter was not in response to any deficiencies noted by the Court.  Moreover, the Court does not foresee any undue prejudice in allowing the Williamses to amend.  Trial in this matter is approximately three months from the date of this Order and Reasons, and the parties' deadlines for discovery and dispositive motions have not yet lapsed.[45]  Finally, there is nothing to suggest to the Court at this time that the Williamses would be unable to plead facts to support a finding of standing.  Accordingly, the Court finds that amendment is appropriate.

### IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motion Pursuant to Fed. R. Civ. P. 12(b)(1) filed by Defendants St. Tammany Parish and Mike Cooper in his official capacity as St. Tammany Parish President and his individual capacity, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs Abraham Williams and Lorraine Williams may file a Second Amended Complaint within **fourteen days** of this Order and Reasons.  Failure to do so will result in dismissal without prejudice.

New Orleans, Louisiana, May 28, 2025.

**WENDY B. VITTER**
**United States District Judge**

---

[44] R. Doc. 26.
[45] *See* R. Doc. 12. The Court notes St. Tammany's opposed Motion to Continue Trial which was filed May 23, 2025. *See* R. Doc. 32. The Court will issue a separate ruling addressing that Motion.